## Joseph Torrey *versus* Nathaniel Bryant.

In December 1832, the plaintiff consigned a quantity of lumber to the defendant, who resided in Boston, for sale. On the morning of the 6th or 7th of August 1833, a letter was received by B, the agent of one M, enclosing an order from the plaintiff, which stated that the proceeds of the lumber when sold, were to be deposited in one of the banks in Boston for the use of M. Notice of the contents of the letter was thereupon given to the defendant by B, and the letter was also shown to the plaintiff and defendant on the 7th of August, they being together at the counting room of B. On the same day, the plaintiff demanded of the defendant the unsold lumber, requested him to render an account, and offered to pay the defendant if any thing was due to him ; but the defendant replied, that he had nothing to do with the plaintiff, and desired him to call on B, and see the letter from M. The plaintiff on the same day commenced an action against the defendant, for not rendering an account, &c. It was *held*, that the defendant had not unreasonably refused to account, at the time when the action was commenced.

ASSUMPSIT. The declaration contained two special counts and the money counts. The special counts set forth, that the plaintiff had consigned to the defendant a quantity of cherry tree lumber, for sale ; that the defendant promised to sell the lumber so consigned, to render an account and to pay over the proceeds ; but that he had refused although requested so to do.

The defendant pleaded the general issue.

At the trial, before *Wilde* J., the plaintiff called as a witness, Isaiah Bangs, of the firm of Bigelow & Bangs. The witness, on cross examination, produced a letter from R. S. M'Collum, dated August 1, 1833, and addressed to Bigelow & Bangs, enclosing an order or certificate from the plaintiff dated July 22, 1833, which stated, that the proceeds

of the lumber in the hands of the defendant when sold, were to be deposited in one of the banks in Boston for the use of M'Collum. By this letter, Bigelow & Bangs were requested to call on the defendant and to have him pay the proceeds of the lumber to them, if sold, or of what was sold, and it not all sold, to close the sale as soon as possible; the proceeds, when received of the defendant, to be deposited according to the directions in the order. The witness then testified, that the letter was received on the 6th or 7th of August, 1833, in the morning; that he thereupon gave notice of the contents of the letter to the defendant; and that at some time on the 7th of August, the plaintiff and the defendant being at the counting-room of Bigelow & Bangs, the witness showed them the letter and order, which the parties there examined and discussed.

Lewis Mills, who was called as a witness by the plaintiff, testified, that on August 7, 1833, the plaintiff demanded of the defendant the unsold lumber, and requested him to settle and make out his account, the plaintiff saying, that he was ready to pay the defendant, if there was any thing due to him; that the defendant replied, that he had nothing to do with the plaintiff, (the impression of the witness being, that he alluded to some transfer of the lumber,) and requested him to call on Bigelow & Bangs and see the letter from M'Collum.

The plaintiff relied upon an implied promise to account and pay over the proceeds, as resulting from the relation of the parties.

The writ was dated on August 7, 1833, and was served on the same day.

The defendant called Joseph Swett, as a witness, who testified, that, on August 7, 1833, towards evening, the defendant tendered to the plaintiff his account of sales of the lumber, requested him to pay the balance due for advances and expenses over and above the proceeds of the sales then made, and stated that he was ready to deliver to the plaintiff all the lumber then unsold, upon receiving such balance; and that the plaintiff replied, that if the de-

Torrey
v.
Bryant.

fendant would give up the lumber first, then he would settle with him.

It appeared, that the defendant had received most of the lumber in December 1832 ; that he had sold it by retail until the demand made upon him by the plaintiff ; and that soon after that, he sold 14,847 feet by wholesale, which was all that remained unsold. It was not contended by the plaintiff, that the defendant had not used due diligence and skill while he continued to sell the lumber by retail.

The jury returned a verdict for the plaintiff.

The defendant moved for a new trial, on the ground that the verdict was against evidence, in relation to the refusal to account, on the part of the defendant.

*March 21st.* *H. H. Fuller*, for the defendant, to the point, that the defendant did not unreasonably refuse to account under the circumstances of the case, cited Paley on Ag. 65.

. *C. P. Curtis*, for the plaintiff, cited *Wilkyns* v. *Wilkyns*, Carth. 89 ; *Wilkin* v. *Wilkin*, 1 Salk. 9 ; *Hunter* v. *Welsh*, 1 Stark. Cas. 224 ; *Topham* v. *Braddick*, 1 Taunt. 572 ; *Hardwicke* v. *Vernon*, 14 Ves. 510 ; *Pearse* v. *Green*, 1 Jac. & Walk. 135 ; *Clark* v. *Moody*, 17 Mass. R. 145 ; *Langley* v. *Sturtevant*, 7 Pick. 214 ; *Collyer* v. *Dudley*, 1 Turn. & Russ. 421 ; *Nickolson* v. *Knowles*, 5 Madd. R. 47.

*June 22d.* PUTNAM J. delivered the opinion of the Court. The question is, whether the defendant had unreasonably refused to account, at the time when the action was commenced. If he had, the judgment should be for the plaintiff, according to the verdict. If he had not, the plaintiff should become nonsuit and pay costs to the defendant. And we think, that the facts proved touching the order of the plaintiff on the defendant, of July 22, 1833, to account with M'Collum, and the letter of M'Collum to Bigelow & Bangs, dated August 1, 1833, have a material bearing in the case. Reasonable or not, is a question of law, where all the facts are ascertained. Let us consider the facts and circumstances.

By that order the plaintiff directed the defendant to deposit the proceeds of the lumber in some Boston bank for the use of M'Collum ; and by the letter of M'Collum written eight days afterwards, Bigelow & Bangs were directed to call on

the defendant and receive the proceeds of the property for the use of M'Collum. Notice of these papers was given by Bigelow & Bangs on the 6th or 7th of August, 1833, to the defendant. After that notice by the agents of M'Collum, the plaintiff made a demand upon the defendant to account with him. The defendant then became liable to one or the other of those adverse claimants, and it made no difference to him which of them was legally entitled to the property. The defendant had no more interest than that of a mere stake-holder  But he was obliged, at his own peril, to determine to which party he should properly account. Under the impression, no doubt, that he was liable to M'Collum, the defendant answered the plaintiff, that " he had nothing to do with him." This is a phrase which might be used in a manner not offensive, but as reminding the plaintiff that he himself had directed the defendant to account to some other person. And in the same conversation he gave the reason for that remark ; he referred to the assignment to M'Collum, and requested the plaintiff to call on Bigelow & Bangs, and see the letter of M'Collum. It would seem that the plaintiff should have explained, and shown some good reason, why he made a claim directly contrary to his order. He made no explanation ; but immediately commenced his action ; whether before or after the discussion that took place between the parties at the counting room of Bigelow & Bangs, does not appear ; and it is not material that it should. But it was on the same day on which the agents of M'Collum gave notice of his claim, on which the plaintiff made his demand, and on which the defendant was perplexed with these adverse claims.

Now it appears clearly to the Court, as matter of law from the evidence, that the defendant was not in any default at the time when the plaintiff commenced his action ; and that there is no evidence in the case from which a jury would be warranted to infer that the defendant had waived his legal rights. We think, under the circumstances, the defendant had a right to take a reasonable time for consideration and for the obtaining of legal advice touching his duty and liability. And such a reasonable time for consultation and

Torrey
*v.*
Bryant.

advice, would have extended beyond the time when the action was commenced. It is to be recollected, the case finds that the plaintiff did not contend that the defendant had not used due diligence and skill while he continued to retail the lumber. So that he was in no default, unless his not accounting to the plaintiff *instanter*, put him in the wrong. It is true that after the writ was served, the defendant offeied to account with the plaintiff. Whether the defendant judged correctly or not of that matter, we are not now called upon to decide. The demand of the plaintiff was certainly against the apparent tenor and effect of his order on the defendant. How it might be explained we know not. If the papers were in reality what they purported to be, it would seem that the defendant was accountable to M'Collum, and not to the plaintiff. If, for example, the property were originally in the plaintiff, and a creditor of the plaintiff had summoned the defendant as trustee, and the defendant had disclosed the plaintiff's order in favor of M'Collum, and M'Collum's letter to Bigelow & Bangs, notifying the defendant to account for the use of M'Collum, it would seem, that the defendant would have been discharged. But those papers and that transaction might perhaps be impeached on the ground of fraud, or otherwise. We do not now decide upon their validity. It is sufficient for the decision of the question now to be settled, that the defendant was not liable to an action by either of the parties thus adversely claiming, until he had had reasonable time for inquiry as to the facts, and for reflection and consultation upon his legal rights and duties growing out of the whole subject. Such reasonable time not having been allowed, the verdict is set aside and a new trial granted. The new trial will be of no avail, unless the facts shall be varied.